IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BOGARD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MATTHEW BOGARD, APPELLANT.

Filed May 9, 2023.    No. A-22-623.

Appeal from the District Court for Douglas County: TRESSA M. ALIOTH, Judge, on appeal thereto from the County Court for Douglas County: THOMAS K. HARMON, Judge. Judgment of District Court affirmed.

Michael J. Wilson, of Berry Law Firm, for appellant.

Kevin J. Slimp, Omaha City Prosecutor, and Lindsey L. Bitzes for appellee.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

PIRTLE, Chief Judge.

INTRODUCTION

Matthew Bogard appeals from an order of the district court for Douglas County affirming the county court's judgment finding him guilty of assault and battery (sexual assault-touch) and indecent exposure, both violations of the Omaha Municipal Code. Based on the reasons that follow, we affirm.

BACKGROUND

On July 6, 2020, the State filed a criminal complaint in the Douglas County Court charging Bogard with two violations of the Omaha Municipal Code: (1) assault and battery (sexual assault-touch) in violation of § 20-61(3); and (2) indecent exposure in violation of § 20-114. The

charges arose from events occurring on March 2, 2020, when the victim, M.F., was babysitting for Bogard's children at his home.

At the time of the incident M.F. was a 20-year-old college student who had previously babysat for the Bogard family about six times. At some point after M.F. had put the children to bed, Bogard returned to the home. M.F. testified that this was the first time Bogard relieved her of babysitting; the other times it had been either Bogard's wife or Bogard and his wife together. M.F was in the laundry room folding clothes. Bogard came in the laundry room and was holding an unopened bottle of alcohol that he showed to M.F. Bogard then asked M.F. if she had any body piercings. M.F. "shared with him the visible piercings" on her body, including her pierced ears and nose. Bogard then specifically asked if she had her nipples pierced. M.F. told Bogard she had nipple piercings and that she did not disclose those piercings initially because she thought it was inappropriate to share with him. Bogard then asked if he could see her nipple piercings. She told him she did not "know if that would be okay" and Bogard "nodded." At that point, M.F. lifted her shirt and sports bra on one side, exposing one breast.

M.F. testified that she felt pressured to show him her piercing because he was her boss, he was a man, and she did what he asked. She also testified that her position in the laundry room played a part in that as well. Bogard was standing in the doorway of the laundry room about three feet away from M.F. and the doorway was the only exit from the laundry room.

When M.F. lifted her shirt and sports bra, Bogard moved toward her and touched her exposed breast and piercing. After touching M.F.'s breast, Bogard asked to see the other breast, and M.F. lifted her shirt and bra, exposing her other breast and piercing. Bogard also touched that breast and piercing. M.F. testified that Bogard touched each breast for several seconds and that it made her feel uncomfortable. When asked whether she did anything while Bogard touched her breasts, M.F. answered simply, "No." During the incident, Bogard asked about the size of the jewelry and mentioned that he wanted his wife to get her nipples pierced but she was hesitant about doing it.

Bogard next stepped back and shared that he was pierced "down there." Bogard then unzipped his pants and took his penis out of his pants and showed M.F. his piercing. M.F. testified that she was unsure if his penis was erect at the time, indicating that it may have been "in between." M.F. testified ". . . after having his penis out, he -- probably, by the look on my face -- put it back in his pants and zipped back up his pants, and then he said, 'Let me get you some money.'" After Bogard paid M.F. for babysitting, M.F. left the residence.

After leaving the residence, M.F. called her sister, her best friend, and her mother, and told them all what had happened. When she returned to her college dorm, she called the police and reported that she had been assaulted. A police officer came to her dorm room that night and she told him what happened. She admitted that she originally told the police that Bogard lifted her shirt and sports bra himself because she was nervous the police would not believe that she did not want to be touched if she told them she exposed her breasts to Bogard.

On redirect, M.F. stated she did not want Bogard to touch her breasts when she lifted her shirt. She again stated that she told him she did not think it was appropriate to show him her nipple piercings, but he pressed her. She also testified that Bogard was between her and the only exit to the laundry room at the time and he still owed her for babysitting.

Omaha Police Officer Christopher Miller, over a hearsay objection by Bogard, was permitted to testify that M.F. reported the incident to him on March 2, 2020, and recounted what she told him had occurred. Specifically, he testified:

> The victim stated that she had been babysitting for a family that she had babysat for -- for several times. She said that, previously, she had interacted with the mother of the children when she normally babysat; but, on this instance, the father she identified as Matthew Bogard -- he had arrived home in an intoxicated state, in her belief, holding a bottle of alcoholic beverage and had began asking her about her tattoos and piercings.
>
> . . .
>
> She said that the conversation went from asking about piercings and tattoos -- and when she got done explaining, he asked specifically about her breast piercings, and that she had omitted that because she felt uncomfortable when he asked specifically about it. She tried to ignore the question. He further asked if he could see the nipple piercings. She stated she did not feel comfortable with that and he proceeded to lift her shirt and grope her.

Bogard, represented by counsel at trial, did not testify on his own behalf nor did the defense call any witnesses to testify or offer any other evidence in his defense.

The county court found Bogard guilty of assault and battery (sexual assault-touch) and indecent exposure. Bogard received a sentence of 18 months' probation for both convictions, as well as a 14-day jail sentence for the assault and battery conviction.

Bogard appealed to the district court, which affirmed the county court's judgment and sentence.

## ASSIGNMENTS OF ERROR

Bogard assigns that the district court erred in affirming the county court's judgment because (1) there was insufficient evidence to support a finding of guilt for assault and battery (sexual assault–touch) pursuant to § 20-61(3) of the Omaha Municipal Code, (2) there was insufficient evidence to support a finding of guilt for indecent exposure pursuant to § 20-114, and (3) the county court committed reversible error in admitting Miller's testimony over his hearsay objection.

## STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Kilgore*, 30 Neb. App. 273, 967 N.W.2d 743 (2021), *review denied* (Jan. 12, 2022). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id.* When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* When deciding appeals from criminal convictions in county court, we apply the same standards of review that we apply to decide appeals from criminal convictions in district court. *Id.*

In considering a claim of insufficient evidence, an appellate court will not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. *State v. Grant*, 310 Neb. 700, 968 N.W.2d 837 (2022). Such matters are for the finder of fact. *Id.* Absent prejudicial error, a conviction will generally be affirmed so long as the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the elements of conviction beyond a reasonable doubt. *Id.*

## ANALYSIS

*Assault and Battery.*

Bogard assigns that the district court erred when it affirmed the county court's judgment finding him guilty of assault and battery. Bogard was convicted of assault and battery (sexual assault-touch) under Omaha Municipal Code § 20-61(3). Our analysis would generally begin with the language of the ordinance that Bogard was convicted of violating. However, Bogard has failed to include the ordinance at issue in the record, so we may not consider that ordinance's text. See *State v. Grant, supra*. We must instead apply the ordinance's text as reproduced in the State's long-form complaint. *Id.* Absent anything to the contrary, we give that language its plain and ordinary meaning. *Id.*

Count I of the State's complaint defined Bogard's offense of assault and battery (sexual assault–touch) in relevant part as follows: "[Bogard] did . . . unlawfully, purposely or knowingly . . . (d) touch the sexual or intimate parts of the body of [M.F.] without [her] consent for the purpose of arousing or gratifying the sexual desire of either party."

Bogard argues there was insufficient evidence to find him guilty of assault and battery because the State failed to prove he touched M.F.'s breasts (1) without her consent, and (2) for the purpose of arousing or gratifying the sexual desire of either party.

We first address whether the State presented sufficient evidence to show Bogard touched M.F.'s breasts without her consent. We note that neither Bogard nor the State has provided or suggested that a definition of "without consent" exists in the Omaha Municipal Code. Rather, both parties look to the definition found in Neb. Rev. Stat. § 28-318(8) (Reissue 2016). Lacking any other applicable definition, we consider whether consent existed in light of the definition found in § 28-318(8) and case law interpreting that definition. Section 28-318(8) states that "without consent" means:

(a)(i) The victim was compelled to submit due to the use of force or threat of force or coercion, or (ii) the victim expressed a lack of consent through words, or (iii) the victim expressed a lack of consent through conduct, or (iv) the consent, if any was actually given, was the result of the actor's deception as to the identity of the actor or the nature or purpose of the act on the part of the actor;

(b) The victim need only resist, either verbally or physically, so as to make the victim's refusal to consent genuine and real and so as to reasonably make known to the actor the victim's refusal to consent; and

(c) A victim need not resist verbally or physically where it would be useless or futile to do so.

In *State v. Gangahar*, 9 Neb. App. 205, 609 N.W.2d 690 (2000), we noted that under § 28-318(a) and (b), the inquiry is not just whether the defendant thought the victim expressed a lack of consent, but whether a reasonable person would have known the victim's words and conduct were a "genuine and real" refusal of consent.

When Bogard initially asked M.F. if she had nipple piercings, she told him she did, but she did not think those piercings were an appropriate thing to share with him. When Bogard asked to see the piercings, M.F. expressed that she was unsure she wanted to do that. When M.F. exposed her breast, Bogard began touching M.F.'s breast and piercing. Based on M.F.'s testimony, she expressed her unease in discussing the topic of her nipple piercings and then expressed that she felt it was inappropriate to display the piercings at Bogard's request. Further, there was no evidence that there was any conversation about Bogard touching M.F.'s breasts; he only asked to see the piercings.

As the district court found, M.F.'s testimony expressing verbal resistance was sufficient evidence for the county court to conclude that a reasonable person would have known M.F.'s words and conduct were a genuine and real refusal of consent.

Bogard next argues that the State presented insufficient evidence that he touched M.F. for the purpose of arousing or gratifying the sexual desire of either party. Statutes requiring proof that a defendant's sexual contact with the victim had been for the purpose of "sexual arousal or gratification" do not require proof of actual sexual arousal or gratification, but only circumstances and conduct which could reasonably be construed as being for such purpose. *State v. Charron*, 226 Neb. 871, 873, 415 N.W.2d 474, 475 (1987).

Bogard argues that the touching of M.F.'s breasts took place during a conversation regarding nipple piercings and claims his interest in M.F.'s nipple piercings was based on his desire for his wife to get her nipples pierced. However, the fact that he immediately reached out and began touching her breast when she lifted her shirt and bra indicates that the touching was for sexual gratification. There would be no need for the touching if he had only been interested in seeing the piercings. Bogard's subsequent conduct of exposing his penis to M.F. after touching her breasts also indicates that his conduct was for the purpose of arousing or gratifying his sexual desire.

We conclude, as the district court did, that there was sufficient evidence for the county court to conclude that under the circumstances, Bogard's conduct could be reasonably construed as being for the purpose of sexual arousal or gratification.

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Grant*, 310 Neb. 700, 968 N.W.2d 837 (2022). We conclude after viewing the evidence in the light most favorable to the State that the county court did not err in finding there was sufficient evidence to convict Bogard of assault and battery (sexual assault-touch). Therefore, the district court did not err in affirming the county court's decision. Bogard's first assignment of error fails.

*Indecent Exposure.*

Bogard next assigns that the district court erred when it affirmed the county court's judgment finding him guilty of indecent exposure. He argues the evidence was insufficient to find him guilty of the charge. Again, Bogard has failed to include the ordinance at issue in the record, so we must instead apply the ordinance's text as reproduced in the State's complaint. See *State v. Grant, supra.* According to the State's complaint, Bogard violated Omaha Municipal Code § 20-114, indecent exposure, by "purposely or knowingly expos[ing] his/her genitals under circumstances likely to cause affront or alarm." Similarly, public indecency under Neb. Rev. Stat. § 28-806(1)(b) (Cum. Supp. 2020) requires proof that exposing one's genitals in public was done with "intent to affront or alarm" any person. In *State v. Sierks*, 232 Neb. 233, 440 N.W.2d 231 (1989), the Nebraska Supreme Court stated that the question of whether a defendant had the requisite intent to affront or alarm under the public indecency statute was similar to the inquiry from *State v. Charron, supra*, regarding whether sexual contact with a victim was for the purpose of sexual arousal or gratification of either party. The court held that public indecency does not require proof of actual intent to affront or alarm, but only circumstances and conduct which could reasonably be construed for such purpose. See *State v. Sierks, supra.*

In the present case, the evidence presented by the State was sufficient to permit the county court to find that Bogard possessed the requisite intent to affront or alarm. After touching both of M.F.'s breasts without her consent, Bogard told her he was pierced "down there." He then unzipped his pants and took his penis out of his pants to show M.F. his piercing. M.F. testified that "probably, [because of] the look on [her] face" he put his penis back in his pants and zipped his pants. Bogard's exposure of his penis to M.F. was deliberate. His clear purpose in exposing his penis was to call M.F.'s attention to it. M.F. never expressed any interest in seeing Bogard's penis piercing. Viewing the evidence in the light most favorable to the State, the circumstances were such that the county court could properly conclude that Bogard's exposure of his penis was done purposely or knowingly under circumstances likely to cause M.F. affront or alarm. The district court did not err in affirming the county court's judgment finding Bogard guilty of indecent exposure. Bogard's second assignment of error fails.

*Miller's Testimony.*

Bogard assigns that the district court erred in affirming the county court's admission of Miller's testimony over Bogard's hearsay objection. Prior to Miller's testimony Bogard objected claiming that the statements were inadmissible hearsay. The State asserted that his testimony was being offered for the effect on the listener. See *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019) (statements not hearsay if offered to show effect on listener). Miller was allowed to testify that M.F. reported the incident to him and he recounted what M.F. told him had occurred.

On appeal, the district court stated that assuming the county court erred in admitting Miller's testimony, Bogard suffered no prejudice because the statements were cumulative to M.F.'s prior admissible testimony. The district court found that the only information Miller testified to that did not come out in M.F.'s testimony was an allegation that Bogard was intoxicated during the incident with M.F. It then stated:

> While this assertion might strengthen the reasoning of the Court's prior analyses if it were
> admissible, [Bogard] being sober throughout the incident with M.F. does not significantly

impact any of the Court's prior findings. In other words, none of the Court's reasoning changes without Officer Miller's testimony. Thus, any error in admitting the statements was harmless.

We agree that even if there was any error in admitting the testimony of Miller, which we do not decide here, it was harmless error. Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt. *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016). The testimony of Miller was cumulative of M.F.'s testimony. Miller did not testify about any fact regarding the incident to which M.F. did not also testify, with two exceptions. First, as the district court noted, Miller testified that M.F. told him she believed Bogard was intoxicated when he arrived home. M.F. only testified that Bogard was holding an unopened bottle of alcohol when he came into the laundry room. She did not testify regarding whether she believed Bogard was intoxicated or sober.

Second, M.F. testified that she pulled up her shirt and sports bra when Bogard asked to see her nipple piercings. Miller testified that M.F. told him Bogard lifted her shirt and bra. However, M.F. explained that she originally told the police that Bogard was the one who lifted her shirt and bra because she was nervous the police would not believe that she did not want to be touched if she told them she lifted her shirt and bra.

We conclude that Miller's testimony that Bogard was intoxicated and that M.F. told him Bogard lifted her shirt and bra does not change the analysis as to whether the elements of the offenses were met. There was competent evidence to support a conviction for both offenses. Any error in admitting the testimony of Miller was harmless beyond a reasonable doubt. This assignment of error fails.

## CONCLUSION

We conclude that the State adduced sufficient evidence to sustain the convictions for assault and battery (sexual assault-touch) and indecent exposure, both violations of the Omaha Municipal Code. Accordingly, the district court's order affirming the county court's judgment is affirmed.

AFFIRMED.